with case number 22-1377, Hoffer v. Tellone. Mr. Hendy, whenever you're ready. Good morning, Your Honors, and may it please the Court. Mitchell Hendy on behalf of Richard Hoffer, the appellant. I'd like to reserve two minutes for rebuttal. The jury's role as the fact-finder is sacrosanct in this legal system, and thus when an adverse inference instruction is properly requested, and the record before the jury would support the giving of that instruction if credited, then the district court must yield and let the jury decide there's disputed questions. Can I ask, I mean, this kind of issue comes up not infrequently pre-trial, and as a district judge you'd hold a hearing and you'd make factual determinations and you'd decide what sanctions, including potentially adverse inference or dismissal or the like. There's nothing that would suggest that that would have to be a jury determination, is there? Well, I think the Fifth Circuit's ruling in Van Winkle suggests yes, that when there's a disputed question of fact that goes to the prerequisites of an adverse inference, that those questions are properly resolved by the jury and the jury alone. And so there's a very different situation when the case is, when the issue comes up pre-trial, there could be that. So you agree, pre-trial, you're not required to go to trial to determine an appropriate sanction, including dismissal or an adverse inference? If there's disputed factual questions, yes, Your Honor, I think that that's required. In the Fifth Circuit. I'm sorry? It's in the Fifth Circuit. That's in the Fifth Circuit, and I think that this court's decision in Rosbach from the previous year is not inconsistent with that, in that there was a very different factual record where there was really no disputed question that a sanction was warranted. And that also was in the context of a case terminating sanction, unlike just a permissive adverse inference jury instruction. The question is whether in the context of a jury instruction, where the prerequisites could be satisfied, a jury could find that a second taser video existed, and that that taser video was destroyed with the requisite intent. The jury should have been allowed to make that fact-finding, and that's what the Fifth Circuit... So are you saying that at the end, based on, at the time of the instruction here, it was a mistake for the court not to include an instruction about spoliation? Yes, Your Honor, it was a mistake not to allow the jury to weigh those prerequisite facts. Well, but suppose the judge had decided at the end, okay, I'll put it to the jury, would there have been facts in the record at that point? I'm sorry, I don't follow. Would there have been facts in the record that the jury could have examined to reach a, reach a conclusion? Sure, the... At the time, at the time. In other words, this is a side issue. It wasn't part of the, the substance of the case itself. By the time of the charge conference, there was definitely adequate evidence in the record from which a jury could have come that there was a second taser video and that it was destroyed with the requisite intent. By the time that the court made that ruling, the evidence in the record would have supported that finding. Uh-huh. Well, in other words, there was, when the witness testified, there was cross-examination on intent and what happened to the... That was, all those facts were in the record? There are evidence in the record, and it's not just what the officer testified to. Remember, there was also Sandra Cuevas' testimony, where she found, she overheard a defendant, Defendant Talone, say not only that she got a few good kicks in on my client, but also that she was holding a USB drive and said that this shows everything that we did and nothing that he did. And that in itself... What does that mean? Well, what, what, what USB drive is that? Do we know? We, we know that, we know from the taser log that the taser was connected to a USB drive. Yes, do you know that that USB drive was the, contained this particular information? We know that... Or could it have been any, any USB drive? It could have been, but the testimony was... The other, the other taser. It, well, it could not have been the other taser video that was admitted at trial, and that's because everyone who talked about that taser video admitted that there was no, no other officer present in that video. The only thing that was seen was Mr. Hoffer laying on the ground, arms beneath him, and no officer was touching him in that video. It was just the taser. And so when, when Officer Talone is said to have said that I got a few good kicks in on him, and this shows everything we did and nothing that he did, well, that everything we did could conceivably include the kicks in on Hoffer, and that was not shown in the video that was played at trial. So that, that would give certainly circumstantial, I agree, it's circumstantial evidence, but it's enough evidence where if a jury were to credit that testimony, it would warrant an adverse inference instruction. I want to make sure I understand your answer to Judge Nathan's first question about when a jury is to decide a question about a factual predicate for a spoliation issue. Is it anytime there's like a factual dispute over whether an adverse inference or some other remedy is warranted? I think we can confine it to just the adverse inference instruction because that's in the nature of a jury instruction and consistent with this Court's rulings about like the entrapment defense instruction and other jury instructions. The, the bottom line principle is if there's evidence in the record that viewed towards the, viewed in light of the requesting party would support the instruction, then it should be given to the jury to sort out. And so yes, in the context of an adverse inference instruction, if the prerequisites for that instruction are met, whereas that if a jury credited the evidence, that is credit Officer Goff's testimony, that there was a second video that was overwritten, and credit Sandra Cuevas' testimony, that it showed that everything we did and nothing that he did or that would have showed her getting a few good kicks in on him. If the jury credited that evidence, then I think it's undisputed that an adverse inference instruction... How about dismissal of a case, just to I think if there's disputed questions of fact that, that's more like the Rossback case. And in the Rossback case, when you're talking about case terminating sanctions, where it's much more inherent power of the court and the court's equitable powers of finding that there was fraud on the court, in that context I think that you could be a different rule, that the jury, that the court could sit as a fact finder in that context. So that's not what's here. So to the extent, setting aside if a circuit decision, to the extent that you're arguing sort of from first principle, since we don't have law on it, that this should go to the jury, I understood you to be saying, juries find facts, courts don't find facts, but you want to make a distinction when it leads to case dismissal? Well, I think in the Rossback case, let's talk about the equitable powers of the district court, and it's a little bit different than what we're talking about in terms of... Why doesn't that include giving an adverse inference instruction? I think it's tough. I think that there's the difference is that an adverse inference instruction is much more tied up with the role of the jury, and how we instruct the jury. And I think that the better, the better course under Van Winkle and other cases, is that the jury should be trusted to resolve those fact findings. And now if it's in the context of a more term, you know, case terminating sanctions, that would obviate the need for a trial in the first instance. And again, that was in a very peculiar case where there was not really any material question of fact about whether or not this foliation had occurred in the Rossback case. In that context, the court could find that there's no disputed question, and that's... This also involves the state of mind of the police in question. Let me ask you another question. Logically, if we took your position that, you know, inference, presumptions, evidence, and so forth should always go to the jury, why wouldn't we have jury trials on suppression motions? Well, I think obviously a criminal context might be very different, but I think that in the context of disputed questions of fact, we typically defer to the jury, right? Yeah, but why would you extol the virtues of the jury in this case as opposed to a criminal case? I mean, you know, it seems to me that the... I guess what I'm getting at is my understanding, generally speaking, is that when it comes to matters of evidentiary weight or presumptions or that kind of thing, that's the area for the judge. That's how the judge kind of decides the trial. The judge can make an error in doing so or not make an error in doing so, and then it's reviewed on appeal. But all sorts of judgments are made during the course of proceedings that lead to evidentiary conclusions, and that's generally the realm of the judge. I mean, the Fifth Circuit seems to me is sort of an exception to what seems to be the standard rule. I see that I'm out of time, but may I briefly respond? Thank you. I would just say that the judge could be trusted to make those decisions, but also the judge can't make clearly erroneous findings of fact, and that's what the court did here. When it said at page 646 of the appendix that says, I have not seen any direct or circumstantial evidence of the intent to deprive, there was circumstantial evidence. Sure, but the judge can't make erroneous findings of fact, and I suppose that juries can reach wrong conclusions, too, if a mistake has been made in some way, and it's a special verdict. I just don't, you know, I don't follow your logic there. Why can't, why is it important that it go to a jury as opposed to a judge? I think that that's the role of the jury trial. This is, especially when this comes up in the heat of a jury trial, that, you know, that if the record supports it, then we should defer to the jury as the fact finder. Thank you, counsel. You've reserved a couple minutes for rebuttal. Thank you. Mr. Ginsburg. Thank you, your honors. May it please the court. The district court's decision not to issue an adverse inference instruction, but instead to let plaintiff raise spoliation with the jury via several other means was sound and not an abuse of discretion. The most straightforward reason is that plaintiff didn't prove by any burden of proof that the defendants acted with the requisite intent to deprive him of video footage of the first tasing, assuming that footage existed. The only evidence even superficially suggesting an intent to deprive is Cuevas' testimony regarding her encounter with Officer Talon. So can I ask you, obviously, intent to deprive is the standard in 3072 after the 2015 amendment. We have residential funding. Is your understanding that a superseding rule abrogates a precedential holding of this court? It's my, well, it's the advisory committee's understanding that when the rule applies, residential funding, and the case is mentioned by name in the advisory committee notes, and the negligence regime of residential funding does not apply. I don't think it's an abrogation of a prior precedent. I think it is a narrowing for the particular circumstance of electronically stored information, which is the subject of Rule 37, and there's no dispute that the video footage, if indeed it existed, is indeed electronically stored information that would come within the terms of the rule. And the district court, in evaluating that testimony from Ms. Cuevas, soundly decided not to credit it. For several reasons, we walk through them at pages 21 to 24 of our brief. I think the most salient one is that Ms. Cuevas was already shown to have lied for plaintiff once before in this very case. Now, my friend on the other side disputes whether the district court was authorized to make that factual credibility call or instead had to to the jury. The Rosbach case is directly on point here. It says that resolving Rule 37 motions, quote, is solely within the purview of the district court as trier of fact, including, quote, assessing the credibility of witnesses, and my friend wants to make a distinction for case terminating sanctions, but that only means that Rosbach applies here a forciori. If no jury finding is required, when there's a case terminating sanction on the line and the stakes are as high as they possibly could be, surely plaintiff doesn't have more of a right to a jury or to decide between a jury and a judge when the lesser sanction. I'm sorry, Your Honor. Did the district court address Cuevas' testimony in reaching the factual conclusion regarding the existence of the second video, the potential existence of the second video? The answer to that question is yes, Your Honor, at page 500 of the appendix, although I do want to disaggregate for purposes of this argument that we actually think we have two grounds to sustain the denial of an adverse inference instruction. Number one, the district court's sound decision that plaintiff hadn't established the existence of the video, which is what you just asked about, and also as I led with in my opening presentation today, that even assuming that video existed, that the intent to deprive wasn't there. And I think the intent to deprive is really the most straightforward path to affirmance here, because that was a straight-up credibility determination. Cuevas' testimony is the only testimony even superficially indicating that an intent was present, and the district court soundly decided not to credit that here. And you know, we've been discussing the province of the jury versus the district court and who gets to do the fact-finding. As I read the record, plaintiff did not ask in the district court for this division of labor that he now intends was required. In other words, in the district court, plaintiff certainly argued for the adverse inference instruction. He wanted that instruction, but I don't see any place in the transcript where he said, and by the way, district court, you must delegate to the jury the issue of finding or not finding the predicate elements. And I wouldn't want this court to come... So I'm sorry, I just want to pin you down on Cuevas, on the district court's evaluation. Yes. I see the district court evaluating at the, I think it's 500 of... Correct. The, expressing skepticism about the testimony's weight, but I think that's a previous discussion with counsel in the lead-up to the ruling, but then in making the adverse inference ruling, I didn't see a discussion, making the decision not to provide the adverse inference instruction, I didn't see discussion of the testimony. Am I wrong about that? No, you're not wrong about that. The district court did not re-discuss the Cuevas testimony at the charge conference in that level of detail. Again, there were no written orders here issued on the discovery, on the Rule 37 issue. I think it's fair to say that the district court had a continuing dialogue with the parties, and it continually, in the record, referred back to prior things that the party said and that it had said. But the only way, and my friend on the other side doesn't dispute this characterization, the way that the district court reached its result, both, at least as to intent to deprive, was making that credibility determination, which under Rosbach it was entitled to make. But I don't want to leave this court with the impression that the jury had no role in the spoliation issue here, simply because there was no adverse inference instruction given. The jury was, in fact, heavily involved with the issue of spoliation, because the district court permitted plaintiff to raise the spoliation issue with the jury throughout the trial. Plaintiff's counsel questioned Officer Goff in the presence of the jury about the spoliation issues, questioned Officer Cuevas, which led to the USB Drive testimony that we discussed, questioned Officer Talone, raised the spoliation issue in her argument. And at the end of the day, even though the district court did not issue the instruction, the district court did not purport to prohibit the jury when it deliberated in considering the spoliation issues that the plaintiff had raised. So this is certainly not a case where there was a denial of an adverse inference instruction and the district court instructed that no mention whatsoever shall be made of spoliation or these video issues or whatever. So the district court's... Would it have been an abuse of discretion had the district court judge having determined that the standard of proof wasn't met on spoliation to keep all of that out? No, absolutely not, because the predicate elements were not met. And our core argument here is that the district court did not abuse its discretion in finding, again, these are intensive fact issues, that the predicate elements of Rule 37 E2 were not met. What I'm saying is that because Rule 37 E2 is itself a permissive rule, it says if the elements are met, the court may issue the instruction, not must. There's another element of this, another layer of discretion that goes into that may. And the district court here really gave plaintiff every leeway to examine that issue before the jury, aside from raising the adverse inference instruction. I see my time is winding up. Unless there are any further questions, I would ask this court to follow Rossbach and affirm the judgment below. Does this case raise the question of what the burden of proof, what the standard is, what has to be proved here? Is it by clear and convincing or is it fair preponderance? Well, we raised the issue. We think the answer is clear and convincing, particularly as to intent to deprive that element of the Rule 37 E2 calculus. But at the end of the day, especially if this court were to resolve the issue on the credibility path that I outlined at the beginning of my presentation, there's no need for the court to go into burden of proof here whatsoever, because the only evidence on plaintiff's side of the ledger when it comes to intent to deprive is Ms. Cuevas' testimony about the U.S.B. encounter with Officer Talone. And whatever the burden of proof is, whatever the burden of proof would have been to... They didn't satisfy it. I'm sorry, Your Honor? You're saying they didn't satisfy it. They didn't satisfy it because whatever the burden of proof would be, the district court soundly determined that that testimony was not credible, could not satisfy any burden of proof. We also think... See, I have a couple seconds left. We also think that the district court acted soundly in finding that the plaintiff did not meet the burden of proof to show that a video existed in the first place. And of course, that burden of proof would have to be met even under the residential funding approach. You still have to show that the thing you say was spoliated actually existed. And the district court really walked the plaintiff through its thought process there. It said, I don't think this testimony from Officer Goff about something being overwritten is enough. That overwriting could mean overwriting, at least in the mind of the district court, within the taser mechanism itself, such that at the end of the day, no video was transmitted to the Yonkers computer system. And while the plaintiff was still prosecuting his case in chief, the district court explained all this. And yet the plaintiff didn't ask for an evidentiary hearing to probe further, didn't call anyone else as a trial witness who had been in the taser chain of custody, and didn't even really expand upon the legal arguments. So even putting intent to deprive aside, I think on that first threshold element of the existence of the video, the district court also soundly found that plaintiff did not meet its burden of proof. So for both of those reasons, and because the absence of an adverse inference instruction was thoroughly tempered by the district court's leeway in allowing plaintiffs to probe spoliation with the jury, we would respectfully ask that the judgment below be affirmed. Thank you, Counsel. Thank you, Your Honors. We'll hear rebuttal. Just briefly, Your Honor, I would urge the court to revisit the Rosbach case and reread it carefully. And I think that on the facts and in the posture of that case, it's very different than what was presented here. That case involved a fraud perpetrated on the district court, and this court clearly held that it was relying on the court's equitable powers to make the credibility determinations that my friend thinks was proper here. It's just not the same context here in the heat of a jury trial where the jury has already heard sufficient evidence that we've allowed an adverse inference instruction. And I think that my friend on the other side likes to say that there was all this other ample opportunity that the court permitted the counsel to explore it. And there's just no substitute, though, for a properly instructed jury, and that if an adverse inference instruction was warranted, it should have been given, even if it was conditional, even if it was conditional on the jury finding those prerequisite facts in favor of my client. But in the absence of a jury instruction, the jury had no recourse, had no idea what to do, what they could have made heads or tails out of the testimony that it heard. And so it's not fair to say that it's just an adequate substitute in the absence of a jury instruction. Can I ask your view of the status of residential funding as binding precedent in the ESI context? I think residential funding remains good law. In fact, in Rossback, the case that my friend cites and relies on, this court continued to apply it and use the culpable state of mind. So I think that remains good law. Why isn't it abrogated, or at least our understanding of the meaning of 3072 now, applied now, post-2015 amendment, require an intent to deceive? Well, I think that even if that higher standard were to apply in the case, the circumstantial evidence admitted at trial would support that finding. So I don't think that this case is dispositive either way on that issue. But I think that this court has chosen to continue to apply residential funding even after the amendment. And so the court can continue that course. Thank you, counsel. Subject to any questions, thank you. And we would urge make it and remand for a new trial. Thank you, counsel. Thank you both. We'll take the case under advisement.